# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CLARENCE L. STOCKTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-07-192-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Clarence L. Stockton requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id.* § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997), *citing Pacheco v. Sullivan*, 931 F.2d 695, 696 (10th Cir. 1991). The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence or substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of [the] evidence must take into account whatever in the record fairly

---

[1] Step one requires the claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on July 16, 1946, and was fifty-nine (59) years old at the time of the administrative hearing. He has an eighth grade education and has previously worked as a construction superintendent. He alleges he has been unable to work since June 15, 2002, because of low back pain, chronic obstructive pulmonary disease (COPD), osteoarthritis, and depression.

## Procedural History

On April 19, 2004, the claimant protectively filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, which application was denied. The claimant maintained insured status through December 31, 2005. ALJ Lantz McClain conducted a hearing and found that the claimant was not disabled on October 26, 2006. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that the claimant retained the residual functional capacity ("RFC") to perform light work (Tr. 21), *i. e.*, work requiring him to lift no more than twenty pounds at a time with frequent lifting/carrying of items up to ten pounds and requiring either a good deal of walking/standing or sitting most of the time with pushing/pulling of arm/leg controls (Tr.

22).  The ALJ concluded that the claimant was not disabled because he "could return to his past relevant work as a construction superintendent as generally performed in the national economy."  (Tr. 22).

**Review**

The claimant contends that the ALJ erred:  (i) by improperly evaluating the medical opinions of his treating physician, Noel Emerson, D.O.; and, (ii) by finding he had the RFC to perform his past relevant work or any other substantial gainful activity.  Neither contention has merit.

The record reveals that in June 2004 the claimant underwent a mental status examination with consulting psychologist Kathie Ward, Ph.D.  The examination report shows that the claimant remained "calm and relaxed" throughout the exam, thought processes were "logical and organized," and there was no "unusual thought content."  The claimant described his mood as being an eight on a ten-point scale and his intellectual abilities were estimated to be in the average to high range.  Although he suffered some deficits in social judgment and problem solving, Dr. Ward opined there was "no evidence of memory or concentration deficits often associated with depression." (Tr. 118-22).

The claimant also underwent a physical examination with consulting physician Dr. Baha Abu-Esheh, M.D, in June 2004.  Dr. Abu-Esheh found that the claimant had a full range of motion in all extremities and the cervical, thoracic, and lumbar spines and no point tenderness or edema was present.  Straight leg raising was negative bilaterally in both the sitting and supine positions, heel/toe walking was normal, and gait was "safe and stable with

appropriate speed." (Tr. 123-32). The claimant was also seen by Dr. Thomas Leahey, D.O. Upon examination, Dr. Leahey noted the claimant had normal gait and station and heel/toe and tandem walking. Although he assessed the claimant with osteoarthritis of the spine and hands, he recommended that he do strengthening exercises and walk (Tr. 211-13).

Dr. Noel Emerson, D.O., was the claimant's treating physician during the period under review for benefits (Tr. 164-77, 189-201). He completed both a physical and mental medical source statement on the claimant. On the physical statement, he opined that the claimant could occasionally lift and/or carry less than ten pounds; stand and/or walk continuously for twenty minutes and for a total of two hours of an eight-hour workday; sit continuously for twenty minutes and for a total of three hours of an eight-hour workday; had to lie down to manage pain during the day; and was limited in pushing and/or pulling repetitively with his feet. The claimant could only occasionally reach, handle, finger and feel, but never climb, balance, stoop, kneel, crouch or crawl. Environmental restrictions included that the claimant was unable to work with dangerous equipment or in any physically demanding position. His impairments were due to severe osteoarthritis of the spine (Tr. 189-90). On the mental statement, Dr. Emerson concluded that the claimant had mild limitations in the following abilities: (i) to remember locations and work-like procedures; (ii) to understand, remember, and carry out short and simple instructions; (iii) to understand detailed instructions; (iv) to make simple work-related decisions; (v) to ask simple questions or request assistance; (vi) to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and, (vii) to be aware of normal hazards and take

appropriate precautions. He then determined the claimant had moderate restrictions for these additional abilities: (i) to carry out detailed instructions; (ii) to maintain attention and concentration for extended periods; (iii) to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (iv) to sustain an ordinary routine without special supervision; (v) to work in coordination with or proximity to others without being distracted by them; (vi) to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (vii) to interact appropriately with the general public; (viii) to accept instructions and respond appropriately to criticism from supervisors; (ix) to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (x) to respond appropriately to changes in the work setting; (xi) to travel in unfamiliar places or use public transportation; and, (xii) to set realistic goals or make plans independently of others. Dr. Emerson based his conclusions on the claimant's depression and anxiety (Tr. 191-92).

The claimant contends that the ALJ failed to properly consider the medical opinions expressed by his treating physician Dr. Emerson in the mental and physical medical source statements. The Court disagrees. The ALJ first made a proper determination that Dr. Emerson's opinions were not entitled to controlling weight. *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (noting that a medical opinion of a treating physician must be given controlling weight if "'the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial

evidence in the record.'"), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). With regard to Dr. Emerson's opinions of the claimant's mental status, for example, the ALJ observed that Dr. Emerson had never recommended any psychiatric treatment for the claimant (nor had the claimant received any) (Tr. 16) and that his treatment records merely noted a few episodes of depression and anxiety (Tr. 193, 199, 201) and a prescription for Zoloft (Tr. 194, 197, 198, 199, 201).[2] Generally, the ALJ found that the physical and mental restrictions imposed by Dr. Emerson were not "entitled to controlling weight" because they were "not well supported by medically acceptable clinical and diagnostic techniques[,]" *e. g.*, the claimant's stress EKG (Tr. 19), pulmonary function studies, chest x-rays and arthritis lab results (Tr. 20) (all of which contradict Dr. Emerson's opinion and support the ALJ's RFC determination), and were inconsistent with the other evidence in the record, *e. g.*, Dr. Ward's opinion on the lack of a mental impairment (Tr. 16); state agency physicians' and psychologists' opinions regarding the nonseverity of both physical and mental impairments (Tr. 17, 20); Dr. Leahey's findings that the claimant had full range of motion, normal strength, normal mental status and normal inflammatory arthritis lab results

---

[2] The claimant does not contend that the ALJ erred in finding that his depressive disorder was not a severe impairment. Specifically, the ALJ determined the claimant had a medically determinable mental impairment but it was not "productive of severe functional limitation(s), either singly or in combination" with claimant's other severe impairments of moderate obesity, low back pain, and COPD (Tr. 16). Because the ALJ found that the claimant's mental impairment was not severe, he was not required to include any of Dr. Emerson's mental restrictions in the RFC assessment. *See, e. g., Hargis v. Sullivan*, 945 F.2d 1482, 1488 (10th Cir. 1991) (noting that "once a mental impairment is considered to be severe, it must be included in the residual functional capacity assessment[.]").

(Tr. 19-20); and Dr. Abu-Esheh's opinion that although the claimant had some back pain, his range of motion, strength, gait and hand/foot usage were all within the normal range (Tr. 20).

The ALJ then proceeded to consider the proper weight to give Dr. Emerson's medical opinions and ultimately determined they were not entitled to "substantial weight." *See Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. Pertinent factors in such a determination include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and, (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ noted in particular that: (i) the claimant had a treatment relationship with Dr. Emerson spanning several years; (ii) Dr. Emerson was an osteopathic physician and no particular specialty was noted; (iii) the claimant's treatment from Dr. Emerson had amounted to only limited prescription medications and a referral; (iv) as noted above, Dr. Emerson's opinions were inconsistent with much of the other medical evidence; and, (v) Dr. Emerson's treatment of the claimant did not support the opinions he expressed on the

medical source statements (Tr. 17-18). Thus, the ALJ clearly rejected Dr. Emerson's opinions and provided reasons for doing so. *Watkins*, 350 F.3d at 1301 ("[I]f the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so."), *citing Miller v. Chater*, 99 F.3d 972, 976 (10th Cir.1996) [internal quotations omitted]. The undersigned Magistrate Judge therefore finds no reversible error in the ALJ's treatment of the opinions expressed by Dr. Emerson on the medical source statements.

The claimant also contends that the ALJ erred in his step four determination that the claimant could return to his past relevant work as a construction superintendent. Again, the Court disagrees. First, the claimant suggests that the ALJ erroneously failed to include limitations imposed by Dr. Emerson in the claimant's RFC, but the ALJ was not required to do this because he found such limitations unsupported by the record. *See, e. g., Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) (noting that a hypothetical question to a VE is sufficient if "it contained all of the limitations found to exist by the ALJ."), *citing Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993). *See also Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990) ("[T]he hypothetical posed to the vocational expert did not set forth only impairments which had been accepted as true by the ALJ. Therefore, his opinion was not binding on the ALJ.") [citations omitted].

Second, the claimant argues that the ALJ solely relied on the VE's testimony when determining that he could return to his past work. In this regard, the ALJ was required to develop the demands of the claimant's past work and to determine whether the claimant had the ability to meet the job demands of such work using the determined RFC. *See Winfrey v.*

*Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). In making this determination, the "'ALJ may rely on information supplied by the VE at step four[,]'" *Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003), *quoting Winfrey*, 92 F.3d at 1025, but "the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work." *Winfrey*, 92 F.3d at 1025. Here, the ALJ was not required to develop the mental demands of the claimant's past work because he found the claimant's depressive disorder was not a severe impairment. *See, e. g., Wise v. Barnhart*, 42 Fed. Appx. 331, 333 (10th Cir. 2002) (finding that because "the ALJ concluded that claimant's mental conditions did not significantly impair her ability to work[,] . . . he did not err in failing to inquire into the mental health demands of claimant's past work[.]") [unpublished opinion]. Further, as to the physical demands of the claimant's past work, the VE testified that the construction superintendent position was generally performed at the light exertional level with a skill level of 7 (Tr. 282). Based on the VE's testimony and his own questioning of the claimant at the administrative hearing about the exertional level at which he performed his past work (Tr. 283-85), the ALJ concluded that although the claimant could not do his past work as he previously performed it, he could nevertheless "return to his past relevant work as a construction superintendent *as generally performed in the national economy.*" (Tr. 22) [emphasis added]. *See, e. g., Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1050 (10th Cir. 1993) (finding that the ALJ shall consider "the claimant's ability to perform either '. . . [t]he actual functional demands and job duties of a particular past relevant job; or . . . [t]he functional demands and job duties . . . as generally required by

employers throughout the national economy.'"), *quoting* Soc. Sec. Rul. 82-61, 1982 WL 31387, at *1. *See also Wise*, 42 Fed. Appx. at 333 ("[T]he issue is not whether claimant can return to her actual past job, but to the type of work she performed in the past.") [unpublished opinion]. Therefore, the ALJ's analysis of the claimant's past relevant work satisfied the requirements set forth in *Winfrey*.

## Conclusion

As set forth above, the Court finds that correct legal standards were applied by the ALJ and the decision of the Commissioner is therefore supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby AFFIRMED.

**DATED** this 4th day of August, 2008.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**